We will hear argument next in case number 18-1901 in Re Wark. Whenever you're ready, Mr. Young. Thank you. I'll be ready for an hour. I should say whenever we collectively are ready. Yes, correct. Thomas Young for the appellant Cynthia Wark. Mrs. Wark is present in the courtroom and vitally interested in the outcome of this case. It's a section 103 case. It's all about the obviousness of her invention in designing a tote bag specifically to hang on the seat side assist handle of a golf cart. The board, the patent office examiner and the board said there's nothing to this. It's not an invention. It's hopelessly obvious and we're not going to grant a patent on it. And here's where they went wrong. 103 analyses based on the Graham protocol, scope and content of the prior art, differences, level of skill in the art, rationale for combining the references to prove something is obvious, is evidence based. There is evidence in this case and there's plenty of case laws that says that that must be evidence based. And finally, this court's case that says you can't reach the conclusion that some combination is just common sense unless you go through the evidence on the way. This court's decision on that score was the Arendi v. Sampson case, 2016. Both the examiner and the board have departed from a proper objective approach to obviousness using the evidence and using the law. What did you say again the invention in this case was? The invention is the specific design of a tote bag to fit such that the strap will fit on and hang over the seat side assist handle of a golf cart. But looking at it, it says that this is a combination claim. That's correct. Involves a golf course, I'm sorry, not a golf course, a golf cart with certain structural features. Correct. And then a personal tote bag adapted and that tote bag has certain features. Correct. And Mrs. Bork did bring a tote bag. If I can just point to it and show you where the critical point of novelty lies. The attachment points for the strap must be at the top rear of the bag and the distance between them must match the distance between or closely match the distance between the anchor points of the seat side assist handle. That structural limitation is found, those structural limitations are clearly found in every claim on appeal. And the result of that match is this particular arrangement of the tote bag on the golf cart. So you're focusing on, even though it's a combination claim, you're focusing on the unique features of the tote bag. That allow the combination to be made. Mrs. Bork did not invent the golf cart, did not invent the seat side assist handle. She took it the way she found it. She designed a tote bag to perform a certain function in combination with that seat side assist handle. That is correct. Now, the board came to the conclusion that there was no structural limitation. There was no departure in the design of the tote bag from the prior art at all. Or did they? Here's what the board said on page 12 of the opinion. This is appendix page 12. I quote, appellant makes no modification whatsoever to the known prior art shoulder strap carry bag of Ammerman. They didn't stop there because the sentence continues without punctuation. With the sole possible exception of the spacing between the attachment points for the carry strap. Which we consider, at best, to be a matter of routine optimization. So they went to the exact point of asserted novelty in the structure. And the necessity for that exact point of novelty to match the distance between the anchor points of the seat side assist handle on the golf cart. And brushed it off. Described it as only a possible exception to the proposition that she made no modification whatsoever to the tote bag. When, in fact, she did. And then farther down, they said that because of this, this is simply a new use of an old device. When the patent simply arranges old elements with each performing the same function that had been known to perform, then it's obvious under KSR. But it's not an old device. It is a new device that's specifically designed for a certain new performance. And if you don't have that specific design change, the new performance doesn't work. So they simply brushed off incorrectly with, frankly, double talk about the key points of novelty in the tote and how it fit the golf cart. Now the second failure that they made was relying on common sense. Basically, they said, despite the fact that the examiner reconstructed the invention from a string of up to six references in 11 different ways. And the references are all over the road. They're in the field of golf. They're in the field of purses. They're in the field of carry bags for computers. They're in all sorts of different fields. Examiner never identified the relevant art. Never identified a person of ordinary skill in the art. Just went on and said, I can reconstruct the invention by picking this element from this patent, this element from this patent, this element from another patent. And finally, coming up with the Fulford patent that shows your seat side assist handles. And the board said, it's not necessary to do any of that. All you need is Ammerman, which shows a tote bag, and Fulford, which shows a seat side assist handle on a golf cart. And the invention is immediately obvious. It also pointed to hard. Yes. The idea of hanging bags off of an armrest. A trash bag hanging in an armrest. But look at all the things that are wrong with hard. The handles go across. First of all, it's an open top trash bag. It's got nothing to do with the game of golf. Board said the relevant art is the game of golf. The hard bag's got nothing to do with the game of golf. It's non-analogous art. The handles are cords. They're not adjustable. They go across the open top of the bag. And it hangs on an arm that has only one anchor point. It's got the cords and their distance between their attachment points are in the wrong place. And the distance got nothing to do with a match between the anchor points of an inverted U-shaped assist handle. The hard armrest sticks out from a hinge point and does this. Totally irrelevant piece of prior art. Okay. Here's the second departure from the evidentiary-based approach to the analysis of Mrs. Wark's invention. They said that once you have a tote bag with a strap that's adjustable, and once you have a golf cart with a seat-sided assist handle, it's obvious to hang the tote bag on the handle. That's common sense, they said. Common sense. But the Arendi case, which came from this court in 2016, says you've got to have an evidentiary base to make that conclusion. What if we read the board as relying at least in part on the hard reference, with the hanging the bag, the trash bag over the armrest? Now, that might not be a piece of evidence you agree with, but it's more than the board merely relying on the two words common sense. It's talking about common sense in the context of recognizing that it was known in the art to hang bags off of vehicle armrests. Some kind of bag on some kind of armrest. But that really doesn't reach the claimed invention, does it? It doesn't get you all the way there, but it's the point. It gives you perhaps a rationale for, in light of the background of the invention, saying that it was well known that we're looking for convenient places to stow equipment, bags, etc. with a golf cart, then you know that you can hang bags off armrests. Why not try to use what we know from hard, that it was known in the art to hang bags off armrests, to perhaps hang a bag off of a golf cart armrest? Here's why. There is evidence in the case, if we're going to reach common sense, to just say it's obvious and common sense to hang something on a seat side assist handle of a golf cart, there is evidence in the case, and we've got to go by that evidence. The evidence is the Fulford patent. The board said, remember, Ammerman and Fulford is all we need. The art is the game of golf. Fulford is in the game of golf. Fulford tells us exactly what the seat side assist handle is for. Number one, it prevents somebody from sliding off the seat and falling on the ground if the driver of the golf cart makes a sharp turn. Number two, you can rest your elbow on it. And number three, a golfer who maybe isn't quite as young or spry as some of them are, is going to use it to assist himself or herself getting in and out of the golf cart. He never said you hang something on it. I've been playing golf for 66 years. I've never seen anyone hang anything on the seat side assist handle of a golf cart, but you don't have to take my word for it. You've got Fulford's word for it. And that's the evidence. If the board is going to say this is an important reference that teaches seat side assist handles, it's got to get to it, to get to the common sense element. It's got to go through Fulford and look for some suggestion in Fulford that you hang things on and design things to dimensionally match the anchor points of this seat side assist handle. It's not there. Teaching's not there. In my view, there's a prejudice in the Patent Office against simple inventions, although we knew a long time ago with Adam's battery case in 1966 that that shouldn't be the case. But nevertheless, it's there. Number two, or the third point, and I'll close with this. You've used most of your rebuttal time already. I see that I have, so maybe I can wind it up with this. There was a failure on the board's part and on the examiner's part to give any credit whatsoever to Mrs. Warg's declaration and testimony with respect to the commercial success that she's enjoyed with her product and the testimonials that came from six golf pros. Now, if the relevant art is the game of golf, which I'm inclined to agree with, let's ask ourselves, who is the person of ordinary skill in the game of golf? Is it a guy that designs golf clubs? Is it a golf player? Is it a guy that designs balls? Or is it the pro who runs the pro shop? That's the guy I think we have to look to. We have testimonials from six pro shop golf operators, and they all said Mrs. Warg's invention is the coolest thing they've ever seen, and they've never seen anything else like it. They brushed it off. I'll have just one more thing to say, but I'll save it for my next time. Thank you. Hi. Thank you. Mr. Court, it sounds like the panel has an understanding of the issues, so I'm happy to answer any questions if you have any. Can you address what the best bases are for moving from an intuitive intuition that this is simple and commonsensical? If you're going to have a bag to store stuff that you want to carry around, why not attach to a golf cart? How do you get that out of the evidence as opposed to the board, or I guess the examiner and then the board members' intuition? Well, I'll first clarify what the board used common sense for in its opinion. On page 9 it says no more than common sense is required to use a seat-side assist handle as a convenient place to loop a shoulder strap of a tote bag. So it wasn't the board using common sense for the entire obviousness conclusion. It was using it to combine the Ammerman bag with the Fulford handle. And the examiner had the hard reference, which was – And also to make – to set the right dimensions for the Ammerman handle? The dimensions – the board concluded that setting that distance was routine optimization, which I think is different and separate from the common sense that it used to combine the two references. And so with the hard reference, which is hanging something from an arm rest on a chair combined with the chair itself and the arm rest in the golf cart with Fulford and then the Ammerman tote bag all together, I think those three references make a strong obviousness case. And you don't need to resort to common sense to – for the entire obviousness conclusion. So does that answer your question? Perhaps. Can you go back to the routine optimization for the design of the bag, having attachment points at certain places in order to most properly and efficiently hang the bag? Sure. So the claim – that part of the claim, it's fairly broad. It says that the distance between the attached ends have to be marginally greater or equal to the maximum longitudinal dimension between the anchor points of the assist handle. So essentially it has to fit snugly around the bottom. And what the board said was that somebody with ordinary skill could figure out how to adjust the strap so it fits that way. Could, but why would they, I guess is the question. I guess they would so that it fits snugly on the handle so that it doesn't flap around. The board said essentially that having that distance is something that an ordinary person of skill in the art could tinker with and figure out. Did the board talk about flapping around or words to that effect? The board did not use the word flapping around. That was my own perspective. No, no, greater stability, whatever, but did the board say something about a relevant artisan seeing that as a reason to do what the artisan could do if only the artisan had a reason to do it? I would say the board just used the term optimum range and it depended on routine optimization to come to those numbers but didn't make a discussion of what happens if it's a little loose or a little tight because the claim is pretty broad. It just requires marginally greater or equal to distance from the assist handle. It doesn't require anything about flapping around, which were my words. If the panel has no further questions, I'll yield my time. Okay, thank you. Just a couple of additional comments, maybe a little analogy. People with cargo that are walking up to a golf cart universally and put it in the bins that are immediately behind the seats and between the seats and the golf bags, they don't even think about hanging something on the seat side assist handle. They follow Mr. Fulford's directions and understand that there are those three things to use it for and that's all. You don't hang something so that it lies. In these claims, it says that once hung, the flat back of the tote bag lies against the outside surface of the seat box of the golf cart. So this piece of cargo carrying equipment is now outside of the physical parameters of the golf cart. Very, very unusual, non-intuitive when indeed all golf cart manufacturers make cargo carrying bins within the physical parameters of the golf cart behind the seats. I use it all the time. The reference Davis, though, also teaches the idea of attaching some kind of bag to the side of a golf cart. You know, I don't get that. Davis is all about an attachment that allows you to carry a certain mix of clubs, usually the putter and the wedge because he argues those are the ones who use the most, outside of, and not necessarily upside down, the interior of the golf bag. It shows a shoulder strap, but nothing but a shoulder strap, and doesn't use the shoulder strap to attach the golf bag to a golf cart. The golf carts are always... Paragraph 142, which the examiner answer is cited to, talks about how you can use the strap for that smaller, skinny container for golf clubs, and you can hang that strap to all kinds of attachment structures, including the golf bag, as you said, as well as a golf cart. And so that's A598. Yeah, but think about it. So therefore, necessarily, if you imagine what that looks like, you're looking at a container, a bag, a mini bag for the putters to be attached to the side of the golf cart. But on the seat side of the cistangle, where the bottom of that bag would be on the ground? I'm just responding to your point, which was the novelty, or alleged novelty, of having some kind of bag hanging off the side of a golf cart. And Davis tells us that, well, at least to a certain degree, that was already known. I guess you could hang it there if you weren't planning on moving the golf cart, because again, the dimensions are such that the thing would be laying on the ground. You don't put stuff on the outside of the golf cart. One thing occurred to me in reviewing... You should wrap up, because you've gone well over. This is my wrap up. The job of the patent office examiner and the board that's going to review his work is like the referee in a football game, particularly whether or not a ball goes through the upright in the process of kicking a field goal. It's just a referee. The ball goes through the uprights, or it doesn't. If it goes through, there's a score. And if it doesn't, there's no score. The examiner, and the board backed him up in this, didn't play that role of a referee. He adopted the role of being a member of the opposing team, whose job was to block the kick. It's not the way a 103 analysis is supposed to work. And you gentlemen are the last best hope for Mrs. Ward of fair treatment to her invention. Thank you. Thank you. Case is submitted.